# EXHIBIT A



**DEPARTMENT OF HEALTH & HUMAN SERVICES**
**Health Care Financing Administration**

**Center for Medicaid and State Operations**
**7500 Security Boulevard**
**Baltimore, MD 21244-1850**

**SMDL #01-010**

January 18, 2001

Dear State Medicaid Director:

Over the past few years, there have been numerous academic, professional, and government studies documenting the problems of access of low-income children to necessary dental services. All acknowledge that this is a complex problem, involving factors as diverse as outreach, reimbursement rates, workforce issues, and administrative complexities.

Most recently, the Surgeon General of the United States issued the first-ever Surgeon General's Report on Oral Health. (The executive summary of the report is available at: http://www.nidcr.nih.gov/sgr/sgrohweb/execsum.html.) The Surgeon General said, "Tooth decay is currently the single most common chronic childhood disease—five times more common than asthma and seven times more common than hay fever." He went on to point out that this is not a minor issue, saying, "Serious oral disorders may undermine self-image and self-esteem, discourage normal social interaction, and lead to chronic stress and depression as well as incurring great financial cost. They also may interfere with vital functions such as breathing, eating swallowing, and speaking. The burden of disease restricts activities in school, work, and home, and often diminishes the quality of life."

The Surgeon General's report specifically notes that, "Medicaid has not been able to fill the gap in providing dental care to poor children. Fewer than one in five Medicaid-covered children received a single dental visit in a recent year-long study period."

As part of our ongoing responsibility for maintaining oversight of the program, this letter provides guidance on how the Health Care Financing Administration (HCFA) will assess State compliance with achieving children's access to dental services under Medicaid.

> As you know, dental services are a mandatory Medicaid benefit for children. Section 1902(a)(43) of the Social Security Act (Act) specifically requires that State Medicaid plans provide or arrange for such services and report to the Secretary on the number of children receiving dental services. In analyzing those State reports, the Office of the Inspector General observed in 1996 that only one in five children nationally had received any required preventive dental services in the year reviewed. Shortly thereafter, HCFA, in conjunction with the Health Resources and Services Administration and other public and private organizations, began an

> effort to provide assistance to States in assessing and eliminating barriers to children's access to Medicaid dental services.

Page 2 – State Medicaid Director

At the same time, many States began to focus on oral health access problems and have adopted plans for eliminating barriers to children's oral health services. In a 1999 survey of Medicaid dental activity, the American Public Human Services Association found that 42 of 44 responding States reported children's dental access problems. The report described activities that several States have initiated to assess and overcome these problems.

However, despite these recent State actions, the U.S. General Accounting Office (GAO) affirmed, in a report released September 2000, that overall utilization remains low. Also, an earlier GAO study (April 2000) determined that the availability of mandated coverage for children under Medicaid does not bridge the income gap to equalize the likelihood of visiting a dentist.

Like you, we recognize a need to fulfill our responsibilities to assure equal access to oral health services. In reviewing HCFA-416 data that you have submitted for fiscal year 1998, and in light of the reports noted above and other studies, it is apparent that a number of States are not meeting participation goals for pediatric dental services. These States must take further actions to improve access to these services for eligible children. We intend to provide technical assistance, information exchange, and ongoing analysis to help these States do so.

As a result of widespread concern about children's access to appropriate dental care, we also intend, through a program of State reviews, to increase our oversight activities and to assess State compliance with statutory requirements. To do so, we have established a two-tiered threshold for conducting reviews of State compliance with dental access requirements. The highest priority for conducting reviews will occur in States where the proportion of Medicaid-enrolled children who made a dental visit in the preceding year is 30 percent or less, based on the most recent data submitted by the State in its HCFA-416 reports. As part of the assessment process, these States are likely to be visited by HCFA Regional Office staff. The second oversight threshold is reached if the proportion of enrolled children making an annual dental visit is above 30, but less than 50 percent; States falling into this category will be subject to review, but at a less intensive level.

The thresholds that will lead to enhanced oversight and the intensity of reviews have been established at levels designed to assure that children eligible for Medicaid have comparable access to services as children in the general population. The most recent national data from the Medical Expenditure Panel Survey (MEPS) (which is derived from confirmed patient encounter data) indicates that 49 percent of children aged 18 and younger from families above 100 percent of the Federal Poverty Level (FPL) have visited the dentist at least once in a 12-month period. Fifty-six percent of children from families above 200 percent of the FPL have had an annual dental visit. Data from the National Health Information Survey (NHIS)(which is based on parent interviews) suggests that annual visits among children above 200 percent of FPL may be as high as 73 percent.

Page 3 – State Medicaid Director

In conducting our reviews, we will collect information and assess State efforts in at least four areas to determine if States are in substantial compliance with Medicaid requirements:

1. *Outreach and Administrative Case Management for Children.*  Under section 1902(a)(43) of the Act, States are required to inform eligible beneficiaries of the availability of EPSDT services, and for "providing or arranging for the provision of such services in all cases in which they are requested." We will assess the adequacy of systems that: link together general health and dental providers; facilitate the referral of children to dental providers for required diagnostic, preventive and treatment services; assist children and their families in scheduling and attending dental appointments; and follow-up to assure that required services were rendered.

These strategies can address access problems that are related to beneficiary and health provider lack of awareness and understanding of Medicaid dental benefits. Although these strategies will not remedy deficiencies in beneficiary access related to lack of participating providers, they play an important role in a comprehensive approach addressing access issues. States that lack such strategies would not be in compliance with 1902(a)(43).

2. *Adequacy of Medicaid Reimbursement Rates.* The GAO, in its September 2000 report, notes that Medicaid payment rates often are well below dentists' prevailing fees. While 40 States reported some rate increase since 1997, GAO notes that "as expected, payment rates that are closer to dentists' full charges appear to result in some improvement in service use." As you are aware, section 1902(a)(30)(A) of the Act requires that payments for medical services "be consistent with efficiency, economy, and the quality of care and are sufficient to enlist enough providers so that such care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." (See also 42 CFR 447.204.)  Inadequate Medicaid non-institutional provider rate structures may expose a State to serious litigation risk. A recent summary of litigation brought against Medicaid agencies to improve dental access found that of 22 cases in 18 States, sixteen cases have been decided or settled and all have been resolved favorably for the plaintiffs. In addition, section 1902(a)(8) of the Act requires that States furnish medical assistance with "reasonable promptness." If provider reimbursement is inadequate to enlist sufficient providers to meet beneficiary needs, then the State would also be out of compliance with this requirement.

In general, HCFA believes that significant shortfalls in beneficiary receipt of dental services, together with evidence that Medicaid reimbursement rates that fall below the 50th percentile of providers' fees in the marketplace, create a presumption of noncompliance with both these statutory requirements.  Lack of access due to low rates is not consistent with making services available to the Medicaid population to the same extent as they are available to the general population, and would be an unreasonable restriction on the availability of medical assistance.  A discussion of fee percentiles and determinants for appropriate fee-setting in the dental marketplace is found at TAB A.

Page 4 – State Medicaid Director

3. *Increasing Provider Participation*.  We will assess the extent to which States are employing administrative strategies not directly related to provider reimbursement to enhance dental providers' participation.  Such strategies include, but are not limited to:  simplification of provider enrollment procedures; rapid confirmation of children's eligibility at the point of service; mirroring commercial insurance plans' administrative processes to the extent possible; utilizing the American Dental Association's procedure codes and claims forms, and facilitating electronic claims submission; reducing prior authorization requirements and revising utilization controls to conform with those in the private sector; establishing a provider hot-line; and, using a dental advisory panel to provide guidance on your program and to field complaints from dental providers.

In some instances, these strategies may reduce costs to dental providers, increase the purchasing power of Medicaid programs by assuring a steady volume of business and prompt payment to providers, and increase access to dental services while reducing the need for payment rate  changes.  Moreover, these strategies can integrate the volume of Medicaid business with the
continuum of non-Medicaid care, so that providers will have an incentive to accept Medicaid patients.  States that do not have such strategies may have more difficulty demonstrating sufficient beneficiary access to comply with the statutory requirements discussed above.

4. *Claims Reporting and Processing*.  The HCFA-416 data are dependent upon data reported by providers.  These data may include provider claims for reimbursement submitted to the State or encounter data submitted by managed care organizations.  We will assess the adequacy of the reporting systems States use to collect the dental data included on the HCFA-416. The new method for reporting dental service data on the HCFA-416 report should be useful in assessing your access issues.  For States with large pediatric populations receiving dental care in managed care arrangements, it is especially important to assure that dental utilization data are obtained by the State from the managed care organizations.  Dental claims data, in the format required by the HCFA-416, may not otherwise be provided routinely by these organizations.  If you are not receiving adequate dental data from your managed care providers, your ability to report accurately on the HCFA-416 will be affected adversely.


Action Plan for Improving Access to Oral Health Services.

To prepare for our reviews and complement your own strategic planning efforts, each State falling under the criteria of either of our thresholds, based on either your 1998 or 1999 HCFA 416 report, must submit to HCFA's Regional Office a "Plan of Action" for improving children's access to oral health services.  As a preliminary measure, **within 60 days from the date of this letter, States may provide additional data (such as revised HCFA 416 data, or data from scientifically conducted State access surveys) for HCFA consideration in determining the intensity of its review and that may be relevant in determining measures necessary to achieve compliance with statutory requirements.**  In the absence of such revised data, each Plan of Action should describe the activities

the State plans to undertake to assure, within three years, that adequate dental access exists.  **We expect to receive your Plan of Action within 120**

Page 5 – State Medicaid Director

**days from the date of this letter.**  The Plan should include:  (1) a discussion of your analysis of the access barriers in the State, and (2) an assessment of strategies you propose to implement to resolve identified access barriers in each (at a minimum) of the four areas outlined above.  Several of the documents noted previously, and additional materials containing example of strategies being developed and implemented in the States to improve children's access are listed in TAB B.  We encourage you to share any innovative approaches and best practices you have developed in your State.

In each Region, HCFA has identified an individual (listed in TAB C), to serve as the Regional Medicaid Dental Coordinator. That individual, working collaboratively with staff from the Health Resources and Services Administration (HRSA) Field Office, is available to provide you with technical assistance. Other assistance will be made available as part of the HCFA/HRSA Oral Health Initiative, which, as noted above, has been developing and providing assistance to States in collaboration with other Federal agencies, public and private organizations, and the dental professional community.  As part of that Initiative, HCFA and HRSA, in the near future, plan to announce Fiscal Year 2001 funding support for the conduct of State dental "summits" in up to 20 States.  These meetings will provide the opportunity for State and local stakeholders to assist you, in a face-to-face forum, in developing State-specific strategies and implementation plans to resolve dental access barriers.  Recently, the National Governors' Association, with HRSA funding support, announced awards to eight States' for participation in a "Policy Academy on Improving Oral Health Care of Children," with a second Academy planned for early next year.  This program also will provide assistance in developing and implementing State-specific strategies.

Thank you for your continued efforts to address the critical oral health needs of Medicaid children.  We look forward to hearing from you about how you plan to address oral health access problems of children in your State.

                                         Sincerely,

                                         /s/

                                       Timothy M. Westmoreland
                                       Director


Enclosures

Page 6 - State Medicaid Director

cc:
All HCFA Regional Administrators

All HCFA Associate Regional Administrators
 for Medicaid and State Operations

Lee Partridge
Director, Health Policy Unit
American Public Human Services Association

Joy Wilson
Director, Health Committee
National Conference of State Legislatures

Matt Salo
Director, Health Legislation
National Governors' Association

Brent Ewig
National Association for State and
Territorial Health Officials

Claude Earl Fox, M.D.
Administrator
Health Services and Resources Administration

TAB A

CONSIDERATIONS IN ESTABLISHING MARKETPLACE-BASED
DENTAL FEES

The determination by Medicaid programs of appropriate dental reimbursement in the marketplace requires an understanding of the nature and economics of current dental practice. This TAB provides a brief overview of several factors that play important roles in such determinations: dental workforce supply and patient demand; dental practice factors; and methods for making prevailing fee comparisons.

The supply of dental providers and demand for their services by the public are important underlying components in any assessment of the dental marketplace.  While it is unclear if a national shortage of dentists and dental hygienists exists, the number of dentists relative to the Nation's population has been in decline since 1990, when that ratio reached its zenith.  The decline in the absolute number of dentists has resulted from the net closure of six dental schools (from a high of 60 during the 1980s) along with an accompanying decrease in dental school class size, such that the equivalent of 20 additional average-size dental schools have been lost over the past two decades.   Only about 4,000 dentists have been produced annually since about 1990, compared to about 6,000 per year graduating in the late 1970s and early 1980s. An increasing retirement rate and declining hours of practice among an aging dentist population and other changes in the dental workforce suggest that no increase in the overall supply of dentists relative to the Nation's population is likely over the next several decade.  In some States--especially States with large rural, and/or low-income inner city populations--geographic maldistribution of dentists clearly is occurring with direct impact on competitive pricing for services.   Other dental and non-dental health care providers may play a role in provision of oral health services, but that potential remains largely restrained and untapped.

On the demand side of the supply-demand equation, a growing and increasingly elderly population continues to have routine dental needs, a desire for aesthetic dental improvement, and an expectation--unlike earlier generations--that they can and will keep their dentitions intact for their entire lives.  Dental demand is elastic, and the long period of recent economic prosperity has generated substantial disposable income among those who otherwise might have considered the purchase of dental services to be discretionary. As a result, dental offices are maintaining busy practices and dentists' average incomes currently are competitive with incomes earned by most primary care physicians.

Although the dental workforce may not increase in size, projection of future dental supply and demand remains difficult; new scientific and technological breakthroughs, for example, may increase the productivity of the workforce and/or improve the oral health of the population. While such changes may impact on future ability to purchase dental services for State Medicaid

programs, knowledge of the current supply and demand situation provides some explanation as to why many dentists are unable or unwilling to provide care when fees are steeply discounted. Indeed, many dentists do not now accept any insurance, preferring to obtain their full charges from patients paying out-of-pocket.

Exploration of other aspects of dental practice, especially in the context of Medicaid, facilitate further understanding of dentists' practice-related economic decisions:

- Most dentists own and operate their own practices, and about 90 percent are solo practitioners or work with only one other dentist. The average dentist is responsible for all costs associated with managing the practice, and practice expenses as a percent of total annual billings are reported to be about 60-70 percent. The high cost of operating a dental practice places additional pressures on the dentist to avoid acceptance of discounted fees.

- The general dentist's practice is more akin to a surgical practice than a primary care practice. A substantial part of the dentist's time is spent directly in procedures involving cutting, removal and restoration of hard and soft tissue. The dentist's work in the operatory requires the appointment of individual patients, and failure of the patient to attend the appointment without adequate prior notice creates "down-time" and lost income. The Medicaid client's reputation for breaking appointments--although not fully substantiated in the literature--has created a perception among dentists that their participation in the Medicaid program will adversely affect the economics of operating a successful practice.

- Dentists are unable to "balance bill" for Medicaid-covered procedures, whereas under most other insurance plans, patients remain responsible for paying the difference between the insurance payment for the covered service and the dentist's usual charges.

- Medicaid clients often have significantly more complex oral health needs than are found in higher income populations, and treatment may require more clinical time per procedure.

An understanding of prevailing fee methodologies is also of critical import in establishing marketplace-based reimbursement system. In many State Medicaid programs, administrators have based their reimbursement schedules on the concept of "UCR," or "Usual, Customary and Reasonable." The terms may be defined, respectively, as follows:

> *Usual fee*: that fee that an individual dentist most frequently charges for a given dental service.

> *Customary fee*: that fee determined by the administrator of a dental benefit plan from actual submitted fees for a specific dental procedure to establish the maximum dental benefit payable under a given plan for a specific procedure.

> *Reasonable fee*: the fee charged by a dentist for a specific dental procedure that has been modified by the nature and severity of the condition being treated and by any medical and dental complication or unusual circumstance, and, therefore, may differ from the dentist's usual fee or the benefit administrator's customary fee.

In the commercial dental benefits sector, this approach usually means that individual dentists submit claims reflecting their usual charges to dental plans for procedures provided to covered beneficiaries, and the dentist is reimbursed either in full or at a modest discounted level of their submitted charges, up to a predetermined upper fee limit. This method appears to be adept at dealing with variations in individual dentist's fee structures, and appears to be able to attract a broad segment of dental providers, to the degree that the discount on submitted fees is not excessive.  The experience of commercial dental preferred provider networks in heavily competitive dental markets indicates that some providers may accept discounted fees in the range of 15-20 percent.  At least one State Medicaid program is reported to be using this method for reimbursement, paying each dentist at 85 percent of each submitted charge.

More commonly in the Medicaid program, the UCR concept has meant that the administrator bases the reimbursement schedule on the average fee submitted by all Medicaid participating dentists for procedures provided for Medicaid enrollees.  The figure is often obtained from the State's Medicaid data base.  As interpreted by Medicaid programs, this use of UCR may not provide a valid reflection of market-based dental fees for several reasons:

- Medicaid programs often apply a discounted rate substantially greater than that used in commercial dental benefit programs, resulting in fees-for-services that are substantially less than prevailing fees.

- Many dentists submit charges to Medicaid that are equal to the amount Medicaid currently pays for a given procedure, rather than the charges they actually bill their non-Medicaid clients. This custom relates to the dentists' recognition that they are bound by law to accept the Medicaid fee as payment in full for any covered procedure, and that billing Medicaid at the Medicaid fee instead of their usual charge eliminates the need to reconcile or "write-off" the difference for each procedure provided.  There is no incentive for dentists to make this accounting adjustment because they cannot "balance bill" Medicaid clients for the difference between Medicaid and their private-sector fees, as they would for their private sector clients.

- Most States' Medicaid fee data bases are at least one year behind the private sector market because they contain fees submitted by dentists in the prior year.   Additionally, and perhaps more importantly, most Medicaid programs have no provisions for updating fee structures on a regular basis.  Over the passage of a few years, the effect of not adjusting for the increase in the market prices for dental services is quickly compounded and the gap becomes wide.

The effect of Medicaid fee setting processes using UCR was described recently in an unpublished study cited by GAO investigators in their April 2000 Report. This study compared a sample of dentists' fees in the private sector to Medicaid fees for the same services, and projected the proportion of dentists who might accept the Medicaid fees. The study indicates that the level of Medicaid dental reimbursement in 1999, nationally and in most States, was about equal to or less than the dental fees normally charged by the lowest 10th percentile of dentists, i.e., 90 percent of dentists charged more, and usually substantially more, than the Medicaid fee.

Use of "percentiles" is exceptionally helpful for Medicaid programs as they enable estimation of the number of dentists in the State who might participate in Medicaid, given any chosen constellation of Medicaid fees. States may then take actions to adjust dental payments so that their programs are likely to enlist sufficient dental providers and assure prompt access equal to that experienced by the general public. To compare Medicaid fees to fee percentiles in a State, you will need to obtain current data sets that describe the percentile distribution of fees that the State's dentists routinely charge. Information on dentist/fee percentile distributions are available from commercial organizations, such as the Ingenix Corporation's Prevailing Healthcare Charges System, or from other actuarially sound State-specific sources, such as those which may be available from commercial dental insurers. The American Dental Association's (ADA) Survey of Regional Fees, which offers regional rather than State-level fee distribution data, is an excellent alternative source of information, if State-specific prevailing fee data are otherwise unavailable. (As noted previously, existing Medicaid claims data bases are not a good source for making dental fee comparisons).

With due consideration of the implications of percentile comparisons, several States recently have moved to increase Medicaid reimbursement levels to considerably higher levels. In most cases it is too soon to tell if the rate increases made by these State are increasing dentist participation, and it is often difficult to separate the affect of fees from the impact of other non-reimbursement programmatic changes being made concurrently. There is reason to believe, however, as noted by the GAO, that fees approaching prevailing private sector fees are more likely to result in increased dentist participation in Medicaid.

The ADA believes that Medicaid fees that approach the 75th percentile will greatly improve the likelihood of dentists' participating in the Medicaid program. The ADA has advised that it is prepared to work intensely with State programs that propose to move towards achieving such reimbursement levels.

Please note, if a State delivers dental care through managed care arrangements, the State remains responsible for assuring that access to dental services for Medicaid enrolled children is achieved. Contracts between States and managed care entities should enable the State to ascertain if the plan has adequate provider capacity to provide the dental services needed by the plan's service area population. Payment rates must be adjusted to assure that plans are able to maintain a sufficient number, mix and geographic distribution of dental providers.

**TAB B**
**REFERENCE MATERIALS**

Spisak S, Holt K, eds. *Building Partnerships to Improve Children's Access to Medicaid Oral Health Services: National Conference Proceedings*, *Lake Tahoe, Nevada, June 2-4, 1998*. Arlington, VA: National Center for Education in Maternal and Child Health,1999, v + 80p.
      Available on the Internet at: http://www.ncemch.org/oralhealth/PDFs/OH%20proceedings.pdf
     Copies are available from:
          National Maternal and Child Health Clearinghouse
          2070 Chain Bridge Road, Suite 450
          Vienna, VA  22182-2536
          (703) 356-1964
          (703) 821-2098  FAX

American Dental Association. *Achieving Improvement in Medicaid: Report of "Aim for Change" in Medicaid Conference, Chicago, Illinois, August 2-3, 1999.* The Association, 1999, iii + 67.
     Copies are available from:
          Judy W. Pulice
          State Government Affairs
          American Dental Association
          211 East Chicago Avenue
          Chicago, IL 60611-2678
          (312) 440-3520
          (312) 440-3539 FAX
          pulicej@ada.org

Epstein, CA.  *State's Approaches to Increasing Medicaid Beneficiaries' Access to Dental Services.*  Center for Health Care Strategies, October 2000, 24p.
      Available on the Internet at: http://www.chcs.org.  Click on "publications"
     Copies are available from:
          Stephen A. Somers
          Center for Health Care Strategies
          353 Nassau Street
          Princeton, NJ  08540
          (609) 279-0700
          (609) 279-0956 FAX

Nagy, Erin. *Dental Care for Medicaid-Enrolled Children.* American Public Human Services Association, July 2000.  15p.
      Available on the Internet at: http://medicaid.aphsa.org/pubs/pubs.htm#dentalcare
     Copies are available from:
          APHSA
          810 First Street NE, Suite 500
          Washington, DC 20002
          (202) 682-0100

Perkins, J and Short J**.**  *State Initiatives to Improve Access to Dental Car*e**.** National Health Law Project, October 17, 2000

Available on the Internet at: http://www.healthlaw.org/pubs/200010dental.html

Perkins, J.  *Docket of Medicaid Cases Filed to Improve Dental Access*.  Oct. 27, 2000
*Updated: Nov. 15, 2000*.
Available on the Internet at: http://www.healthlaw.org/pubs/200011dentaldocket.htm

General Accounting Office.  *Oral Health: Factors Contributing to Low Use of Dental Services by Low-Income Populations*; United States General Accounting Office (GAO), Report to Congressional Requesters. HEHS-00-149, September 2000.  41p.
Available on the Internet at: http://www.gao.gov    On GAO search engine, insert "HEHS-00-149"
Copies are available for $2.00 each at:
U.S. General Accounting Office
P.O. Box 37050
Washington, D.C. 20013

General Accounting Office.  *Oral Health: Dental Disease is a Chronic Problem Among Low-Income Populations*; United States General Accounting Office (GAO), Report to Congressional Requesters. HEHS-00-72, April  2000.  44p.
Available on the Internet at: http://www.gao.gov    On GAO search engine, insert "HEHS-00-72"
Copies are available for $2.00 each at:
U.S. General Accounting Office
P.O. Box 37050
Washington, D.C. 20013

*Fact Sheet "Dental Coverage Under Medicaid*;" Community Voices, September 1999
Available on the Internet at: http://www.stateaction.org/issues/healthcare/dental/dentalfactsh.pdf
Copies are available from"
Center for Policy Alternatives
1875 Connecticut Ave, NW, Suite 710
Washington, DC

*Overview of State Legislation on Access to Oral Health.* Center for Policy Alternatives.  1999
Available on the Internet at: http://www.stateaction.org/issues/healthcare/dental/overview.cfm

U.S. Department of Health and Human Services.  *Oral Health in America:  A Report of the Surgeon General*. Rockville, MD:  U.S. Department of Health and Human Services , National Institute of Dental and Craniofacial Research, National Institutes of Health, 2000.
Available on the Internet at: http://www.cdc.gov/nccdphp/oh/sgr2000-05.htm

Center for Health Services Research and Policy.  Sample Purchasing Specifications for Medicaid Pediatric Dental and Oral Health Services.  George Washington University Medical Center, March 10, 2000.
Available on the Internet at:  http://gwu.edu/~chsrp  Click on "Sample Purchasing Specifications"

## TAB C
## HCFA REGIONAL MEDICAID DENTAL COORDINATORS

**Region I, Boston**
Elena Byrne
Health Care Financing Administration/Medicaid
Department of Medicaid and State Operations
JFK Federal Building, Room 2275
Boston, MA 02203
Telephone: (617) 565-1243
Fax: (617) 565-1083
Email: ebyrne@hcfa.gov

**Region II, New York**
Richard Holligan
Health Care Financing Administration
Division of Medicaid and State Operations
26 Federal Plaza
New York, NY 10278
Telephone: (212) 264-3978
Email: rholligan@hcfa.gov

Nicole McKnight
Health Care Financing Administration
Division of Medicaid and State Operations
26 Federal Plaza
New York, NY 10278
Telephone: (212) 264-2590
Email: nmcknight@hcfa.gov

**Region III, Philadelphia**
Elizabeth Wheeler
Health Care Financing Administration
Region III
The Public Ledger Building, 2nd Floor
150 South Independence Mall West,
Philadelphia, PA 19106-3499
Telephone: (215) 861-4190
Fax: (215) 861-4280
Email: ewheeler@hcfa.gov

**Region IV, Atlanta**
Roberta Kelley
Health Care Financing Administration
61 Forsyth Street, S.W., Suite 4T-20
Atlanta, GA 30303-8909
Telephone: (404) 562-7461
Fax: (404) 562-7481
Email: rkelley@hcfa.gov

Dianne Thornton
Health Care Financing Administration
61 Forsyth Street, S.W., Suite 4T-20
Atlanta, GA 30303-8909
Telephone: (404) 562-7464
Fax: (404) 562-7481
Email: dthornton@hcfa.gov

**Region V, Chicago**
Beverly L. Jones
Health Care Financing Administration
Region V
233 North Michigan Avenue, Suite 600
Chicago, IL 60601-5519
Telephone: (312) 353-3721
Fax: (312) 353-3866
Email: bjones2@hcfa.gov

**Region VI, Dallas**
Scott Harper
Health Care Financing Adminstration
1301 Young Street, Suite 833
Dallas, TX 75202
Telephone: (214) 767-6564
Fax: (214) 767-0322
Email: sharper@hcfa.gov

**Region VII, Kansas City**
Gail Brown-Stevenson
Health Care Financing Administration
Region VII
Federal Building, Room 227
601 East 12th Street
Kansas City, MO 64106
Telephone: (816) 426-3406
Fax: (816) 426-3851
Email: gbrown2@hcfa.gov

**Region VIII, Denver**
Dee Raisl
Health Care Financing Administration
Region VIII
Division of Medicaid and State Operations
1600 Broadway, Suite 700
Denver, CO 80202
Telephone: (303) 844-2682
Fax: (303) 844-2776
Email: draisl@hcfa.gov

**Region IX, San Francisco**
Kaihe Akahane
Health Care Financing Administration
75 Hawthorne Street, 4th Floor
San Francisco, CA 94105
Telephone: (415) 744-2976
Fax: (415) 744-2933
Email: kakahane@hcfa.gov

**Region X, Washington**
Linda Miles
Health Care Financing Administration
Region X
2201 6th Avenue
Seattle, WA 98121
Telephone: (206) 615-2343
Fax: (206) 615-2472
Email: lmiles@hcfa.gov