# EXHIBIT B



**TOBY DOUGLAS**
*DIRECTOR*

State of California—Health and Human Services Agency

# Department of Health Care Services



EDMUND G. BROWN JR.
*GOVERNOR*


SEP 28 2011

Gloria Nagle
Associate Regional Administrator
Centers for Medicare and Medicaid Services
Division of Medicaid and Children's Health
90 7th Street, Suite 5-300 (5W)
San Francisco, CA 94103-6707

RE: Response to March 4, 2011, RAI and August 9, 2011, additional questions on SPA 10-024

Dear Ms. Nagle,

The purpose of this letter is to respond to CMS's March 4, 2011, Request for Additional information (RAI) on SPA 10-024, as well as the additional questions provided to DHCS on August 9, 2011. Unless otherwise noted, the questions and answers are from the original March 4, 2011 RAI. Please also note that we are requesting a revised effective date for this SPA of March 1, 2011.

Our responses to your **[bolded]** questions are as follows:

### CMS 179

1. **Please explain the Federal budget impact you provided on the CMS-179 and the difference in the monthly savings for each fiscal year. Additionally, please clarify whether the budget impact should be for FFY 2011 and 2012.**

   The revised Federal budget impact, based on an effective date of March 1, 2011, is as follows:

   Savings for FFY 10-11 (Mar. 1, 2011 to Sept. 30, 2011)    $24,116,000
   Savings for FFY 11-12 (Oct. 1, 2011 to Sept. 30, 2012)    $65,377,000

   These savings are based on the assumption that FFY 10-11 would include four months of phased down ARRA (increased FMAP for the months of March through June 2011) and 3 months of regular 50 percent FMAP, whereas savings for FFY 11-12 is based on 50 percent FMAP.

Director's Office
1501 Capitol Avenue, P.O. Box 997413, MS
Sacramento, CA 95899-7413
Phone: (916) 440-7400    Fax (916) 440-7404
Internet Address: http://www.DHCS.ca.gov

Ms. Gloria Nagle
Page 2

### Public Notice

2. **Please provide a copy of the published public notice as required by 42 CFR 447.205.**

On February 27, 2009, the Department of Health Care Services (DHCS) first published notice concerning the 5 percent payment reduction for pharmacies enacted by Welfare and Institutions (W&I) Code Section 14105.191. A copy of the notice, published in the California Regulatory Notice Register on February 27, 2009, pages 341-342, is attached as Appendix A. The 5 percent payment reduction for prescribed drugs was provided for in SPA 08-009D, which was disapproved and the subject of a request for reconsideration. The 5 percent payment reduction for prescribed drugs has also been enjoined by the courts and is the subject of petition for certiorari granted by the United States Supreme Court. On December 10, 2010, DHCS published an update notice on the status of implementing the various payment reductions for which it had first published a notice in February 2009, including the 5 percent reduction for pharmacies. A copy of that public notice, published in the California Regulatory Notice Register on December 10, 2010, page 2118, is attached as Appendix B.

**August 9, 2011, CMS follow-up question:**
**Please explain how the State has met the public notice requirements as set forth by 42 CFR 447.205. We note that the proposed effective date of this SPA is October 1, 2010, but the State did not publish a public notice until December 10, 2010. We suggest changing the effective date of the SPA to December 11, 2010, or later. Further, please explain how the content of the December 10, 2010, public notice relates to the rate reduction in this proposed SPA.**

Title 42 of the Code of Federal Regulations, Section 447.205 requires states to publish notice prior to the effective date of a "significant proposed change" in payment methods or standards. As the Department noted in its May 12, 2011, response to the RAI on this SPA, a notice concerning the 5 percent payment reduction was first published in February 27, 2009, which was prior to the "effective" date of that change as described in California Welfare and Institutions Code Section 14105.191. Because the Department had already published a notice in February 2009, the "update" notice, published on December 10, 2010, was not technically necessary, although it too meets the requirements of the federal regulation. The purpose of the December 2010, notice was simply to update providers and other interested parties on the status of various payment reductions for which DHCS had previously published notice pursuant to Section 447.205 on February 27, 2009. The December 10, 2010, notice starts out by reminding the public that DHCS had

Ms. Gloria Nagle
Page 3

previously published a notice on February 27, 2009, concerning the payment reductions enacted by Section 14105.191, including the 5 percent payment reduction for prescription drugs. The December 10, 2010, update notice further explains that a court injunction had blocked the Department from implementing the 5 percent payment reduction for prescription drugs on the March 1, 2009, effective date but that DHCS could retroactively implement the reduction to that date if the court injunction were overturned.

This SPA 10-024 is, therefore, a response to CMS's decision in November 2010, to disapprove SPA 08-009B2 concerning the same 5 percent payment reduction established by W&I Code Section 14105.191. DHCS's requested reconsideration of the disapproval of SPA 08-009B2 is pending. Under the federal regulations, the earliest possible effective date of SPA 10-024 is October 1, 2010; however, the Department is changing the requested effective date for SPA 10-024 to March 1, 2011. The 5 percent payment reduction provided for by SPA 10-024 is not a change in payment standard from the 5 percent payment reduction provided for by disapproved SPA 08-009B2. The only aspect that is different is the effective dates of the SPAs. Thus, California has relied on the fact that, under similar circumstances, the Ninth Circuit has held that a "change in the effective date" in a SPA containing the same rate change for which a state had previously published notice prior to the effective date of a disapproved SPA that is subject to a pending reconsideration request "does not fall under Section 447.205." (*Independent Acceptance Company v. State of California* (9th Cir. 2000) 204 F.3d 1247, 1255.)

Attachment 4.19-B

1. March 4, 2011, CMS RAI:
   We note that for SPA 08-009B and 09-021, the State proposes to revise Supplement 2 to Attachment 4.19-B, pages 1-12. However, the SPA 10-024 submission included only pages 1 and 2. To ensure that the previously proposed changes have been reflected in SPA 10-024, please submit the appropriate pages.

   Please see our response to the August 9, 2011, question, below.

   August 9, 2011, CMS question:
   We note that there are overlapping issues between SPA 09-021 and 10-024. We suggest that you create a new page and only reference the following language: "The payment for drug products, including the drug product payment and the dispensing fee as described in paragraph A.1 for drug products dispensed on or after December 11, 2010, will be reduced by five

Ms. Gloria Nagle
Page 4

percent." We also request you allow us to make pen and ink changes to the CMS 179 to support the revised page.

As suggested, we have moved the language to a different page so that SPA 10-024 will no longer overlap with SPA 09-021. We also authorize CMS to make pen and ink changes to the CMS 179 to support the revised page.

Also, we are changing the requested effective date for SPA 10-024 to March 1, 2011.

2. **Please explain whether this proposed change will affect beneficiary access to pharmacy providers, and how the State will address that. Please discuss whether the State has received any concerns from pharmacy providers regarding this proposed decrease in its reimbursement and if so, how has the State addressed those concerns?**

Obviously, pharmacy providers do not like the fact that Medi-Cal reimbursement is reduced and therefore sue the State. They allege that beneficiary access will be impaired, but all they present is speculation. There is no evidence to show that a 5 percent payment reduction will result in beneficiaries not having adequate access to prescribed drugs. DHCS's determination that a 5 percent payment reduction for prescribed drugs will not negatively impact beneficiary access is explained in the enclosed documents which were previously provided to CMS, titled "Summary of DHCS Rate Studies and Analyses - Payment Reductions July 2008 to Present," pages 5 through 9 under "Prescribed Drugs: SPAs 08-009B2 and 10-024" (Appendix D) and "Analysis and Monitoring of Medi-Cal Pharmacy Access: Provider Availability & Service Utilization" (Appendix E).

3. **Please provide the rationale and documentation for how the State has determined that the proposed decrease in the dispensing fee is reasonable.**

DHCS is not reducing the dispensing fee provided for in the State Plan. It continues to be $7.25 per drug, except for being $8 per drug provided to a beneficiary residing in a skilled nursing facility or intermediate care facility. According to the DHCS's study, the Medi-Cal dispensing fee is above that which is typically paid by other third party payers. The SPA provides that the payment otherwise made to a provider based on the EAC plus dispensing fee is being reduced by 5 percent. DHCS's determination that 5 percent reduced payments for prescribed drugs is reasonable and adequate is described in the enclosed

Ms. Gloria Nagle
Page 5

documents previously provided to CMS, titled "Summary of DHCS Rate Studies and Analyses - Payment Reductions July 2008 to Present," pages 5 through 9 under "Prescribed Drugs: SPAs 08-009B2 and 10-024" (Appendix D) and "Analysis and Monitoring of Medi-Cal Pharmacy Access: Provider Availability & Service Utilization" (Appendix E).

4. **Please provide the rationale and documentation for how the State has determined that the proposed five percent decrease in the EAC is the best estimate of the price generally and currently paid by providers for the drug.**

   The DHCS is not changing or decreasing the EAC in this SPA. The EAC, as defined in the state plan at paragraph A.1 has not been changed. Rather, the SPA provides that the payment otherwise made to a provider based on the EAC plus dispensing fee is being reduced by 5 percent. It should be further noted that pursuant to federal regulations, the purpose of the EAC, as defined in 42 Code of Federal Regulations (C.F.R.) §§ 447.500 and 447.505, is for assuring that states do not make payments for drugs that exceed the federal "upper limits on payment" described in 42 C.F.R, §§ 447.512 and 447.514. DHCS will continue to comply with the applicable federal upper payment limits based on a 5 percent reduction in payments. DHCS's determination that a 5 percent payment reduction will not impair access is documented in the enclosed documents previously provided to CMS, titled "Summary of DHCS Rate Studies and Analyses - Payment Reductions July 2008 to Present" pages 5 through 9 under "Prescribed Drugs: SPAs 08-009B2 and 10-024" (Appendix D) and "Analysis and Monitoring of Medi-Cal Pharmacy Access: Provider Availability & Service Utilization" (Appendix E).

   <u>August 9, 2011, CMS question:</u>
   You provided documentation to show that the proposed rate reduction would adequately reimburse pharmacy providers through March 1, 2009. Please provide additional documentation and analysis to support your assertion that the proposed rate reduction adequately reimburses pharmacy providers as of the SPA's effective date in 2010.

   <u>Further CMS clarification provided via email 8/11/11:</u>
   We are looking for information or documentation that will show how the 5 percent rate reduction proposed for 2010 will meet the requirements of Section 1902(a)(30)(A), which states, in general, that rates must be consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general

Ms. Gloria Nagle
Page 6

population in the geographic area. The data that you provided pertains to the timeframe from 2007 through 2009. Because you have requested a 2010 effective date, we are looking for documentation that relates to 2010.

The access analysis provided by DHCS demonstrated that utilization rates for pharmacy services have remained constant or increased over the period from 2007 through 2009. Based on DHCS's analysis, we believe that there would be no change in that trend through 2010. In fact, we are predicting that utilization will actually rise of over the period between 2009 and 2010.

State Plan Reimbursement and Funding Questions

- Do pharmacy providers retain all of the State and Federal Medicaid payments (including dispensing fees, ingredient costs) benefit management costs, etc.) or are providers obligated to return any portion of the Medicaid payment to the State or local government entity, or any other intermediary organization or entity?

  Pharmacy providers do not return any portion of the Medicaid payments to the State or local government entities (unless an overpayment has occurred) or are otherwise required by the State to return any of those payments to other organizations or entities.

- If pharmacy providers are obligated to return any portion of the payment, the State must provide a full description of the repayment methodology including: a complete list of pharmacy providers that return their payments; the amount or percentage of the payment; and the disposition and use of the funds once they are returned to the State (i.e. general revenue fund, medical services account, etc.)

  Not applicable.

Section 1902(a)(2) provides that the lack of adequate funds from local sources will not result in lowering the amount, duration, scope, or quality of care and services available under the plan. Please describe how the State share of Medicaid pharmacy payment in attachment 4.19B is funded, including the payments made under the proposed amendment. Specifically:

- Describe whether the State share is from appropriation from the legislature, through intergovernmental transfer agreements (IGT), certified public expenditures (CPE), provider taxes, or any other mechanism used by the

Ms. Gloria Nagle
Page 7

> State to provide the State share.
>
> The State share is funded through an appropriation from the Legislature.

- **Please provide your estimate of total expenditures and State share amount for your Medicaid pharmacy payment.**

  The State share is funded 100 percent through an appropriation from the Legislature.

- **If any State share is being funded by IOTs or CPEs, please fully describe the matching arrangement. If CPEs are used: please describe how the State verifies that the expenditures being certified are eligible for Federal matching funds in accordance with 42 CFR 433.51(b).**

  Not applicable.

Section 1902(a)(30) of the Act requires that payments for services be consistent with efficiency, economy, and quality of care. Section 1903(a)(1) provides for FFP to States for expenditures for services under an approved State plan. If you are providing, or propose to provide under this amendment, an enhanced or supplemental payment to pharmacy providers under Section 4.19B of the plan, please provide the following information:

The total amount for each enhanced or supplemental payment provided to pharmacy providers and the precise service cost this payment is covering.

> No enhanced or supplemental payments are being provided.

- **Indicate whether there are public pharmacy providers and if they are receiving payments in accordance with attachment 4.19B that in the aggregate exceed its reasonable costs of providing services. If the payment exceeds the reasonable costs of services (for pharmacy that would be a reasonable dispensing fee and ingredient cost) please indicate whether the State recoups the excess and returns the Federal share of the excess to CMS on the quarterly expenditure report.**

  No enhanced or supplemental payments are being provided.

Ms. Gloria Nagle
Page 8

**Tribal Consultation**

a. Since the tribes and Indian health programs were notified in writing, please provide a copy of the notification, the date it was sent and a list of the entities notified. In addition, please provide information about any concerns, if any, expressed by the tribes and/or Indian health providers and the outcome.

The enclosed notice (Appendix E) was sent to California Tribal Chairpersons, California Indian Health Programs and Urban Indian Programs on December 10, 2010. No comments or questions were received.

b. If any consultation with the tribes and Indians health providers occurred in a meeting please provide a list of invitees, a list of attendees, the date the meeting took place and information about any concerns expressed by the tribes and/or Indian health providers and the outcome.

Not applicable.

Thank you for your assistance in this process.

Sincerely,

Toby Douglas
Director

Enclosures

cc: Beverly Binkier, Health Insurance Specialist
Centers for Medicare & Medicaid Services
San Francisco Regional Office
90-7th Street, Suite 5-300
San Francisco, CA 94103

Steven Johnson, Health Insurance Specialist
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C2-21-15
Baltimore, MD 21244-1850

cc: Continued on next page.

Ms. Gloria Nagle
Page 9

cc:   Vanessa Baird, Deputy Director
Health Care Benefits and Eligibility
1501 Capitol Avenue, MS 4000
PO Box 997413
Sacramento, CA 95814

Pilar Williams, Chief
Pharmacy Benefits Division
1501 Capitol Avenue, MS 4604
PO Box 997413
Sacramento, CA 95814